# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **RICHARD WILLOCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00042** |
| | ) | **Judge Aleta A. Trauger** |
| **HILTON DOMESTIC OPERATING CO.,** | ) | |
| **INC.; 2330 ELLISON LLC; and** | ) | |
| **CHARTWELL HOSPITALITY, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM

Defendant 2330 Elliston LLC ("2330 Elliston") has filed a Motion to Dismiss (Docket No. 19), to which Richard Willock has filed a Response (Docket No. 27), and 2330 Elliston has filed a Reply (Docket No. 30). Defendant Hilton Domestic Operating Co. Inc. ("Hilton Domestic") has filed a Motion to Dismiss (Docket No. 21), to which Willock has filed a Response (Docket No. 28), and Hilton has filed a Reply (Docket No. 31). For the reasons set out herein, 2330 Elliston's motion will be granted in part and denied in part, and Hilton Domestic's motion will be granted.

## I. BACKGROUND[1]

Willock is an African-American man who lives in Madison, Mississippi. The defendants are three companies, all organized under Delaware law, allegedly involved in the operation of a Nashville hotel operating under the Hampton Inn and Suites brand. (Docket No. 1 ¶¶ 1–2, 6–8.) Specifically, Willock has alleged that Hilton Domestic is the franchisor of a number of major hotel

---

[1] Unless otherwise indicated, the facts herein are taken from Willock's Complaint and are taken as true for the purposes of the Motion to Dismiss. (Docket No. 1.)

brands, including Hampton Inn and Suites; 2230 Elliston is the franchisee for the Nashville hotel; and Chartwell operates the hotel for 2230 Elliston. (*Id.* ¶¶ 6–8.)

On October 27, 2018, Willock and his teenaged son traveled to Nashville for a baseball camp at Vanderbilt University. They checked into the Hampton Inn and Suites on nearby Elliston Place, allegedly operated by the defendants, in the early hours of that morning, went straight to their rooms, and, later that day, attended the camp, after which they returned to the hotel. (*Id.* ¶¶ 11–13.) Willock obtained delivery menus from the front desk and ordered some food for himself and his son. When the food arrived, Willock's son returned to their room, but Willock remained in the lobby, where he watched the World Series on a hotel television while eating and using his iPad. Many other individuals, some of them seemingly intoxicated, also congregated in the hotel's lobby area. (*Id.* ¶¶ 14–16.)

While Willock was watching the television, he was approached by the hotel's front office manager, Aimee Cooper. Cooper asked Willock if he was a guest of the hotel, and he said that he was. She asked him his name and room number, at which point Willock asked why he, as opposed to any of the other people in the lobby, was being singled out to prove his status as a guest. Cooper responded by walking away and returning with a security guard. (*Id.* ¶¶ 15–18.) The African-American security guard told Willock that Cooper "does this sometimes" and urged Willock to "go along with it." (*Id.* ¶ 18.) Willock did not comply, and Cooper declared that he should be expelled from the property. An unidentified hotel employee, or someone acting on the hotel's behalf, called the police. The Complaint does not go into further detail about how the incident was resolved. (*Id.* ¶ 19.)

On January 15, 2020, Willock filed his Complaint in this court. (Docket No. 1.) He pleaded five counts against the defendants. Count I is for discrimination in contracting in violation

2

of 42 U.S.C. § 1981. Count II is for discrimination in public accommodations in violation of 42 U.S.C. § 2000a. Count III is for discrimination in public accommodations in violation of Tenn. Code Ann. § 4-21-501. Counts IV and V are Tennessee common law claims for, respectively, intentional infliction of emotional distress and breach of contract. (*Id.* ¶¶ 24–33.)

Hilton Domestic and 2330 Elliston have asked the court to dismiss the claims against them, although Chartwell, at this point, has not. (Docket Nos. 19 & 21.) Hilton argues that the court should dismiss the claims against it for lack or jurisdiction or, in the alternative, hold that Willock has failed to state any claims against it for which relief can be granted. (Docket No. 21 at 1.) It has supported its motion with an Affidavit of James O. Smith, the company's Vice President and Senior Counsel for Legal Corporate Transactions. (Docket No. 22-1 ¶ 1.) Smith claims that a collection of Hilton Domestic's subsidiary companies, not Hilton Domestic itself, is the actual franchisor of the Hampton Inn and Suites brand and that 2330 Elliston's franchise agreement is with an entity called Hampton Inns Franchise LLC. (*Id.* ¶¶ 12–13.) He further explains that, pursuant to the franchise agreement with 2330 Elliston, neither Hilton entity has any ownership interest in the hotel. (*Id.* ¶ 14.) 2330 Elliston does not dispute the court's jurisdiction over it but argues that Willock has failed to state a claim for which relief can be granted because, among other things, some of his claims are untimely. (Docket No. 19 at 1.)

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion on the basis of the affidavits and materials submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th

3

Cir. 1998). It is in the court's discretion, based on the circumstances of the case, which path to choose. *Id.* In any proceeding, however, the party asserting jurisdiction has the burden of proof. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).

When a court rules on a motion to dismiss for lack of personal jurisdiction based upon the affidavits or other preliminary materials, the party asserting jurisdiction need only make a *prima facie* showing of jurisdiction to defeat the motion. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In examining whether the party asserting jurisdiction has made this *prima facie* showing, the court is to construe the facts presented in the light most favorable to that party. *Bird*, 289 F.3d at 871; *see also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360–61 (6th Cir. 2008) (referring to the plaintiff's burden in this context as "relatively slight").

**B. Rule 12(b)(6)**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

4

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## III. ANALYSIS

### A. Jurisdiction Over Hilton Domestic

While these motions were pending, the Sixth Circuit released an opinion that clarified the respective burdens on the parties with respect to a Rule 12(b)(2) motion, as well as the options available to—or not available to—district courts when they consider such motions. The parties in *Malone v. Stanley Black & Decker, Inc.,* No. 19-3880, 2020 WL 3989601 (6th Cir. July 15, 2020), were procedurally situated very similarly to the parties here. The plaintiff sued multiple entities, and one defendant filed a Rule 12(b)(2) motion that it supported with an affidavit including information about the company's business operations relevant to the jurisdictional inquiry. *Id.* at *4. The district court granted the motion, based, at least in part, on the contents of the affidavit, and the plaintiff appealed. The Sixth Circuit held that the district court erred by relying on the affidavit without holding an evidentiary hearing or allowing discovery. *Id.* (stating that the affidavit was "irrelevant" because the district court had considered the motion on written submissions alone).

5

The court explained that, once a plaintiff makes a *prima facie* showing of personal jurisdiction—which he can do solely through allegations in the complaint, construed in the light most favorable to him—the defendant cannot contest jurisdiction on the basis of a "written submission[]" such as an affidavit. The defendant, rather, must either request an evidentiary hearing or restrict his argument to challenging the adequacy of the *prima facie* case as set forth in the complaint and any supporting materials. *Id.* at *5.

Accordingly, the court is not permitted, at this stage, to consider Hilton Domestic's affidavit suggesting that Willock has misidentified it as the franchisor of the Hampton Inn & Suites brand. The court, rather, must confine its analysis at this stage to evaluating Willock's *prima facie* assertion of personal jurisdiction. The Complaint makes the following assertions about Hilton Domestic:

- "Defendant Hilton Domestic Operating Company, Inc., An Incorporation of Delaware, is a corporation organized under the laws of the State of Delaware (hereinafter 'Hilton'), and is engaged in the operation, management, and franchising of hotels, including the Hampton Inn and Suites line of franchises. The Hampton Inn and Suites Nashville-Vanderbilt-Elliston Place is a Hampton Inn and Suites franchise hotel." (Docket No. 1 ¶ 6.)

- "2330 [Elliston] is a Hilton franchisee that, on information and belief, owns and operates the Hampton Inn and Suites Nashville-Vanderbilt-Elliston Place, a hotel that offers accommodations to the public." (*Id.* ¶ 7.)

- "In connection with Mr. Willock and the circumstances described herein, Defendants Chartwell and 2330 [Elliston] acted as the actual or apparent agent of Defendant Hilton. Plaintiff believed and understood that he was doing business with the owner of the brand

6

name 'Hilton' which is Defendant Hilton, and Hampton Inn and Suites, a Hilton franchise." (*Id.* ¶ 9.)

- "Mr. Willock . . . made [his reservation] as a Hilton Honor member. Mr. Willock chose the Hotel over other local options because it was a Hilton franchise hotel." (*Id.* ¶ 11.)

- "There is a history of similar incidents involving African-American guests and invitees at Hilton and Hilton franchise hotels throughout the United States, continuing up to and indeed beyond the time of Mr. Willock's incident." (*Id.* ¶ 23.)

Under the framework mandated by the Sixth Circuit, this court must accept the facts alleged—such as that Hilton Domestic is the actual franchisor of the Hampton Inn and Suites brand—as true. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, assertions made by Willock that are purely legal in nature—most prominently, his claim of an agency or apparent agency relationship between Hilton Domestic and the other defendants—are not binding on the court.

In addition to the allegations in the Complaint, Willock has provided two Declarations in an attempt to buttress his argument that the court has personal jurisdiction over Hilton Domestic. First, Willock has provided a Declaration by his wife, Gretchen Willock, stating that she made the reservation through the Hilton Honors iPhone application. (Docket No. 29-2 ¶¶ 2, 4.) Ms. Willock has attached a confirmation e-mail she received for the transaction. That e-mail has the header "Hampton Confirmed" and directs the recipient to a website at the http:///www.hilton.com URL. (*Id.* at 6.) She has also attached a second e-mail, with the header "Check in now and use Digital Key for your stay at Hampton By Hilton Na[sh]ville-Vanderbilt Elliston Place." (*Id.* at 12.) The e-mail invites the recipient to use his or her phone as an alternative to a conventional hotel room

key, allowing the guest to "breeze through check-in and start [his or her] stay sooner with the Hilton Honors app." (*Id.*) The second Declaration, by Willock himself, confirms his wife's account and reiterates that he believed he was staying at a "Hilton hotel." (Docket No. 29-1 ¶ 6.)

"Where the state long-arm statute extends to the limits of the due process clause" —as Tennessee's does—"the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates due process." *Bridgeport Music, Inc. v. Still N. the Water Publ'*g, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996); *see also Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998). In order for this court to exercise personal jurisdiction over a non-resident defendant consistently with due process, the defendant must have had "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct grounds for personal jurisdiction. *Id.* at 417-18. General jurisdiction allows the court to "exercise jurisdiction over any claims a plaintiff may bring against the defendant," whereas specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678–79 (6th Cir. 2012) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). "The 'paradigm' forums in which a corporate defendant" will be subject to general jurisdiction "are the corporation's place of incorporation and its principal place of business," with general jurisdiction available elsewhere only in "exceptional" cases. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1552 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014)). Accordingly, even

if Hilton Domestic had conducted a substantial amount of business in Tennessee, it would be difficult for Willock to establish general jurisdiction. He relies, instead, on specific jurisdiction.

The assertion of specific jurisdiction "depends on an affiliation between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014) (internal quotation and citation omitted). In evaluating a claim of specific personal jurisdiction, the court must apply the three-part test set forth by the Sixth Circuit in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968):

> (1) "[T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state";
>
> (2) "[T]he cause of action must arise from the defendant's activities" in or contacts with the forum state; and
>
> (3) "[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable."

*Id.*

The Sixth Circuit has defined purposeful availment as "something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities." *Bridgeport Music*, 327 F.3d at 478 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)). A defendant purposefully avails himself of a forum's protections when his "conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* at 479 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)). The purposeful availment requirement prevents jurisdiction from arising "as a result of random, fortuitous, or

9

attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The relevant inquiry is "whether the defendant has 'engaged in some overt actions connecting the defendant with the forum state.'" *Id.* at 480 (quoting *Dean*, 134 F.3d at 1271). Put another way, "[t]he question is whether a defendant has followed a course of conduct directed at the society or economy within the jurisdiction of a given sovereign." *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 884 (2011).

Willock has provided two sets of facts as potential grounds for a finding of purposeful availment: (1) Hilton Domestic's supposed status as the franchisor of the hotel; and (2) Hilton Domestic's operation of the website and app through which Willock's room was booked. With regard to the first of these sets of facts, the court has little doubt that entering into a franchise agreement for the operation of a brick-and-mortar business in a state is typically sufficient purposeful availment with regard to at least some hypothetical claims, such as those arising directly out of the franchise agreement itself. *See, e.g.*, *Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 701 (M.D.N.C. 2007) (finding specific jurisdiction based on franchising and related activities). Whether specific jurisdiction in this case can be based on the alleged franchise relationship will therefore hinge on the remaining *Mohasco* factors.

Hilton Domestic's operation of its website and app similarly passes the first step of the *Mohasco* inquiry. Although Willock does not yet have any direct evidence regarding how responsibilities are divided among Hilton companies with regard to the website, app, and phone-based key system, Hilton Domestic does not appear to dispute that it oversees at least some aspect of that framework of interconnected services. Instead, Hilton Domestic argues that operating a booking website for hotels is not sufficient to amount to purposeful availment for purposes of personal jurisdiction. In particular, Hilton Domestic cites *Fidrych v. Marriott International, Inc.*,

10

952 F.3d 124 (4th Cir. 2020), in which the Fourth Circuit held that Marriott International, Inc.'s operation of its booking website was an insufficient basis for finding personal jurisdiction in South Carolina with regard to claims related to a hotel room in Italy booked through that site by South Carolina residents. *Id.* at 143. The fact that *Fidrych* did not involve a hotel in the relevant jurisdiction, however, renders its analysis minimally persuasive. The Fourth Circuit made clear that it was important to its conclusion that the allegedly defective hotel room was not in South Carolina. *See id.* at 140 (relying on the fact that property at issue was not in South Carolina and failure to inspect property did not occur in South Carolina); *see also id.* at 143 (basing holding on lack of "case-related contacts with South Carolina"). If anything, then, *Fidrych* would seem to support the proposition that personal jurisdiction would be improper for this case in Mississippi—which, whether correct or not, is irrelevant to Hilton Domestic's motion.

"In this Circuit, 'operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first *Mohasco* factor 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Still N The Water Publ'g*, 327 F.3d at 483 (quoting *Bird*, 289 F.3d at 874). Interactivity is key because it draws the distinction between, on one hand, a passive jurisdictional contact wholly within the control of the non-defendant user who accessed the defendant's website and, on the other hand, a back-and-forth experience in which the defendant itself, through the interactive website, engaged with an individual or entity in the forum *See Neogen*, 282 F.3d at 890 (noting that "intentional interaction with the residents of a forum state . . . is evidence of a conscious choice to transact business with inhabitants of a forum state"); *see also See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006) (describing a "passive" website as one that "simply posts product and contact information"). "While a general posting on the internet is not sufficient to establish minimum

11

contacts, courts may find personal jurisdiction appropriate where there is 'something more' to indicate that the defendant purposefully directed its activities to the forum state." *Unidisc Music, Inc. v. Antibemusic S.r.l.*, No. 3-13-1451, 2014 WL 2573974, at *2 (M.D. Tenn. June 9, 2014) (Campbell, J.).

It cannot be reasonably disputed that the Hilton iPhone app and website that Ms. Willock used are at least somewhat interactive. Indeed, even the opinion in *Fidrych* agrees that hotel booking is an at least somewhat interactive service. 952 F.3d at 141. Moreover, the interactive component was not merely between the site and the individual user, but also involved the site's acting as an intermediary between that user and a third party, the franchisee hotel operator, who controlled a parcel of real property in this jurisdiction The site in this case included the option to book a room at a specific, identifiable Tennessee hotel, and it appears that, through the electronic card system, the website even directly facilitated physical access to the room. This court struggles to see how that could fall short of the minimum requirements of purposeful availment.

A defendant's purposeful availment of a forum, however, provides no basis for exercising personal jurisdiction if there is not a sufficient link between the purposeful availment and the underlying lawsuit. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 (2011)). Hilton Domestic argues that, even if it has engaged in minimum contact with Tennessee for some purposes, those

contacts are too attenuated from the conduct giving rise to this suit—namely, Cooper's alleged singling out of Willock for suspicion and scrutiny in the hotel's lobby.

The Sixth Circuit has characterized this aspect of the *Mohasco* test as imposing a "lenient standard." *Bird*, 289 F.3d at 875. In one of its least demanding formulations, the test provides that, "[i]f a defendant's contacts with the forum state are *related to* the operative facts of the controversy, then an action will be deemed to have *arisen from* those contacts." *CompuServe, Inc.*, 89 F.3d at 1267 (emphasis added and citation omitted); *see also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723–24 (6th Cir. 2000) ("Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact.") (quoting *Mohasco*, 401 F.2d at 384). At other times, however, the court has suggested, consistently with recent Supreme Court language, that "the cause of action must . . . have a *substantial connection* with the defendant's in-state activities." *Dean*, 134 F.3d at 1275 (emphasis added); *see Walden*, 571 U.S. at 284.

The Sixth Circuit has, in some cases, applied a proximate causation standard to resolve this issue. *E.g., Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014); *see also Burger King*, 471 U.S. at 474 ("[I]t may well be unfair to allow [out-of-state parties] to escape having to account in other States for consequences that arise proximately from such activities."). That approach requires more than a bare showing of 'relatedness' while still recognizing that the caselaw developing the specific jurisdiction inquiry has stressed that this particular aspect of the analysis is not intended to erect too high a barrier to jurisdiction. The court, therefore, will follow the proximate cause model for assessing the connection between Hilton Domestic's actions and Willock's claims.

13

Willock has asserted facts sufficient to establish that both the franchise agreement and Hilton Domestic's operation of the website were but-for causes of his injuries. He claims that, if the hotel had not been a Hilton franchise, he would not have stayed there. Similarly, he would not have been at the hotel if no one had booked a room for him there. The Sixth Circuit, however, has cautioned against assuming that but-for causation is a sufficient connection to give rise to jurisdiction:

> [A]lthough the analysis may begin with but-for causation, it cannot end there. The animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable. . . . But-for causation cannot be the sole measure of relatedness because it is vastly overinclusive in its calculation of a defendant's reciprocal obligations. The problem is that it has . . . no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain. If but-for causation sufficed, then defendants' jurisdictional obligations would bear no meaningful relationship to the scope of the benefits and protection received from the forum. As a result, the relatedness inquiry cannot stop at but-for causation.

*Beydoun*, 768 F.3d at 508 (6th Cir. 2014) (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 322 (3d Cir.2007)) (quotation marks and internal citations omitted).

Although the definition of "proximate cause" has had different formulations, it generally refers to something along the lines of "a foreseeable, natural, and probable cause" of the underlying events or injury. *Rupert v. Daggett*, 695 F.3d 417, 425 (6th Cir. 2012). Based on that standard, the court is persuaded that Willock has failed to demonstrate specific personal jurisdiction over Hilton Domestic with regard to his claims in this case. The only role for Hilton Domestic in the underlying events was entering into a franchise agreement and connecting Willock, though its website, with his hotel room. Those contacts might be sufficient to support personal jurisdiction with regard to some cause of action, but these causes of action involve events too distant from Hilton Domestic's involvement to permit this court to consider the claims against it. Cooper's actions simply were

not a reasonably predictable result of establishing a Nashville franchise or allowing Willock to book a room and offering him access to an electronic key.

Finally, Willock, presumably realizing that Hilton Domestic's own connections to this controversy are limited, argues that the other defendants' actions should be attributed to Hilton Domestic for jurisdictional purposes because they were its apparent agents. "Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude him from denying another's agency." *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 421–22 (Tenn. Ct. App. 2004) (quoting *Mechs. Laundry Serv. v. Auto Glass Co.*, 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002)). In order to rely on apparent agency, a party must show that "(1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." *Id.* (quoting *Mechs. Laundry*, 98 S.W.3d at 157).

Willock argues that, by allowing the hotel to operate under a Hilton brand and be booked through the Hilton Honors website, Hilton Domestic held the other defendants out as its agents. Willock's argument, however, would effectively transform every franchisor-franchisee relationship into an agency relationship. That, though, is not how franchising works. A franchise agreement is merely a type of trademark licensing arrangement that allows the franchisee to do business under the franchisor's brand as long as the franchisor retains some limited amount of quality control. *See F.D.I.C. v. Homestead Mortg. Co.*, No. 04-74842, 2010 WL 5420279, at *11 (E.D. Mich. Dec. 27, 2010) (explaining franchising). While "the existence of a franchisor-franchisee relationship between persons does not in itself *preclude* the existence of a principal-agent relationship between them," neither does it mandate any such connection. *Bricker v. R & A*

15

*Pizza, Inc.*, 804 F. Supp. 615, 623 (S.D. Ohio 2011) (quoting *Coleman v. Chen*, 712 F. Supp. 117, 124 n.6 (S.D. Ohio 1988)) (emphasis added). The mere existence of a franchise relationship is insufficient to establish actual or apparent agency; the test for either must be met with additional facts. *See, e.g.*, *Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 832 (E.D. Mich. 2000) (holding that hotel franchisee was not apparent agent of franchisor); *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 89 (E.D.N.Y. 2000) (collecting franchisor liability cases).

As the court has already explained, Willock cannot bind the court to an erroneous interpretation of agency law simply by including that interpretation in his Complaint. None of the facts in the Complaint itself actually suggests that any agency relationship, actual or apparent, existed between Hilton Domestic and any of the other defendants. Willock does not allege that Hilton Domestic controls the other defendants in this case or that it did anything that would give Willock the impression that it did, aside from his misunderstanding of how franchising works. Willock, therefore, must rely on Hilton Domestic's own actions to establish personal jurisdiction in this district. Those actions, however, are insufficiently related to his claims. The court will therefore dismiss Willock's claims against Hilton Domestic, without prejudice, based on the court's lack of personal jurisdiction.[2]

## B. Claims Conceded as Untimely

As a preliminary matter, Willock concedes that his claims against 2330 Elliston for intentional infliction of emotional distress and violation of Tennessee Code Annotated § 4-21-501 are untimely and are not covered by any tolling agreement or other applicable defense against dismissal. The court, therefore, will dismiss Counts III and IV as to 2330 Elliston.

---

[2] The court stresses, however, that its holding is specific to Hilton Domestic. The court makes no ruling regarding whether it would have jurisdiction over another Hilton entity, depending on that entity's relationship to the underlying facts.

16

**C. Remaining Claims Against 2330 Elliston**

The remaining claims against 2330 Elliston are Count I, for discrimination in contracting in violation of 42 U.S.C. § 1981; Count II, for discrimination in public accommodations in violation of 42 U.S.C. § 2000a; and Count V, for breach of contract. (*Id.* ¶¶ 24–33.) 2330 Elliston argues that all of these claims against it should be dismissed because, according to Willock's own allegations, it was merely the owner of the hotel, which was operated by Chartwell.

1. Section 1981

First enacted as § 1 of the Civil Rights Act of 1866, *see Runyon v. McCrary*, 427 U.S. 160, 168 (1976), and since amended, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute, among other things, "prohibits private racial discrimination in the sale or rental of real or personal property." *Runyon* , 427 U.S. at 170. The Sixth Circuit has held that, to establish a *prima facie* case of discrimination under § 1981 with circumstantial evidence, a plaintiff must be able to establish the following:

(1) [He] is a member of a protected class;

(2) [He] made [himself] available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; and

(3) [He] did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that

(a) [he] was deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or

(b) [he] received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.

17

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 871 (6th Cir. 2001) (quoting *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 707 (D. Md. 2000)). Although the *prima facie* case is not determinative at the motion-to-dismiss stage, it is instructive with regard to Willock's claims because it paints a general picture of the kind of business relationships and conduct covered by the statute.

2330 Elliston argues that Willock has failed to plead that he and 2330 Elliston had any contract or business relationship sufficient to support a § 1981 claim. As with Hilton Domestic's jurisdictional argument, this argument requires the court to look closely at the allegations of the Complaint. Contrary to 2330 Elliston's assertions, Willock does, in fact, allege that 2330 Elliston is the "Hilton franchisee that, on information and belief, owns and operates the Hampton Inn and Suites Nashville-Vanderbilt-Elliston Place, a hotel that offers accommodations to the public." (Docket No. 1 ¶ 7.) 2330 Elliston points out that Willock also alleges that Chartwell, "[a]t all times pertinent [to the Complaint], . . . managed and operated the Hampton Inn and Suites Nashville-Vanderbilt-Elliston Place." (*Id.* ¶ 8.) 2330 Elliston asks the court to read those arguably contradictory statements to mean that 2330 Elliston was a passive owner with no actual role in operating the hotel. Doing so, however, would go against the principle that, when the court is considering a Rule 12(b)(6) motion, it must construe the language of the Complaint in the way most favorable to allowing the plaintiff's claims to proceed. The most favorable reading of the language of the Complaint is that both 2330 Elliston and Chartwell were involved in the ongoing operation of the hotel.

2330 Elliston argues that Willock should be required to plead facts about the respective roles of 2330 Elliston and Chartwell with more particularity. It identifies no authority, however, that would mandate a heightened pleading standard here. Moreover, it is not clear to the court how

Willock could be expected to know the details of the internal division of responsibilities between 2330 Elliston and Chartwell. It may well be that 2330 Elliston has no actual role in running the hotel. That, however, is a factual question that the court cannot resolve here. The court therefore will not dismiss the § 1981 claim.

### 2. Section 2000a

Section 2000a provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Congress enacted § 2000a in response to "voluminous testimony" establishing the hardships faced by African-Americans seeking "lodging" and "transient accommodations" while traveling. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 252–53 (1964). "To establish a *prima facie* case under § 2000a, plaintiff must show that he or she (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class." *Bormuth v. Dahlem Conservancy*, 837 F. Supp. 2d 667, 674 (E.D. Mich. 2011) (citing *McCoy v. Homestead Studio Suites Hotels*, 390 F. Supp. 2d 577, 582 (S.D. Tex. 2005)). The District Court for the Southern District of Ohio, in an attempt to refine the somewhat nebulous latter elements of that test, concluded that, given the shared commercial nature of the relevant relationships, the *prima facie* case employed in the § 1981 setting can be adopted with regard to § 2000a. *See Fall v. LA Fitness*, 161 F. Supp. 3d 601, 607 (S.D. Ohio 2016). This court agrees.

2330 Elliston argues that Willock has not sufficiently alleged that he was discriminatorily denied access to a public accommodation. Specifically, Willock does not allege that he was actually expelled from the hotel. A claim for discrimination in a commercial setting, however, does not necessarily require such a showing. For example, a plaintiff can establish liability under § 1981 by showing that the defendant "treated [him] in such a hostile manner that a reasonable person would find it objectively discriminatory." *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 639 (6th Cir. 2009) (citing *Christian*, 252 F.3d at 872). The court sees no reason why such a principle would fail to apply under § 2000a. Indeed, allowing a plaintiff to establish liability through discriminatory hostility would be consistent with the widely recognized general principle that discrimination can be effected by harassing a person to the point that he reasonably feels unwelcome. *See, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (discussing harassment under Title VII); *Brown v. Metro. Gov't of Nashville & Davidson Cty.*, 722 F. App'x 520, 525 (6th Cir. 2018) (discussing harassment under the Age Discrimination in Employment Act); *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002) (discussing harassment under the Americans with Disabilities Act); *Greenan v. Bd. of Educ. of Worcester Cty.*, 783 F.Supp.2d 782, 788 (D. Md. 2011) (discussing harassment under the Pregnancy Discrimination Act).

"In determining whether a defendant's actions rise to the level of being markedly hostile, courts consider whether the conduct is: '(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Keck*, 566 F.3d at 641 (quoting *Christian*, 252 F.3d at 871). Willock has alleged that Cooper singled out one person, among many people in the lobby area, who gave every

appearance of being an ordinary guest, and not only confronted him about his status but did not believe him when he replied that he was a paying customer of the hotel. When he asked why he was being questioned, Cooper immediately involved hotel security, which shortly thereafter escalated into at least a threat of expulsion and law enforcement involvement. The court cannot assume, at this stage, that her actions were insufficiently hostile to give rise to liability.

Cooper's alleged behavior in this case may seem minor compared to, for example, the level of severe and pervasive harassment required to establish liability in the employment context. Section 2000a, however, inherently governs relationships that are more incidental and transitory than the relationship between an employer and employee. *See, e.g.*, *Daniel v. Paul*, 395 U.S. 298, 302 (1969) (allowing enforcement of § 2000a against recreation area snack bar). The level of hostility and aggression necessary to materially impair the relationship between hotel and guest is not necessarily the same level as required to effectively change one's conditions of employment. Reading the allegations in the light most favorable to Willock, Cooper's decision to confront him and then to rapidly escalate the encounter could be sufficient to support relief in this context. The court, therefore, will not dismiss Willock's claim under § 2000a.

### 3. Breach of Contract

In Tennessee, a claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of that contract and (3) damages caused by the breach of contract. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). 2330 Elliston argues that Willock has not adequately pleaded either of the first two elements—the existence of a contract to which 2330 Elliston was a party or the violation, by 2330 Elliston, of a contractual duty.

The Complaint makes the following claims about contractual duties:

- "Defendants breached their contract and covenant of good faith and fair dealing with Mr. Willock because of his race . . . ." (Docket No. 1 ¶ 2.)

- "Defendants denied Mr. Willock the use and enjoyment of the benefits, privileges, terms and conditions of contract that they extend to other similarly situated guests who are not African-American." (*Id.* ¶ 20.)

- "Defendants breached their contract with Mr. Willock by interfering with his enjoyment of guest facilities, facilities made available to all other hotel guests, because of his race." (*Id.* ¶ 21.)

- "Defendants breached their contract and their covenant of good faith and fair dealing with Plaintiff." (*Id.* ¶ 33.)

2330 Elliston takes issue with Willock's reliance on group pleading regarding the "Defendants" and his failure to specify which party or parties actually entered into the applicable contract. As the court has already explained, however, Willock is entitled to a certain amount of leeway with regard to identifying respective corporate responsibilities prior to discovery.

His allegations, however, lack detail in other ways as well. Willock never actually describes the contract at issue, although presumably it was his room rental contract. He also does not identify any particular relevant contractual provision, although, if the court reads the language in the light most favorable to Willock, he appears to be suggesting some contractual provision regarding access to common areas. His rights under any such provision are never described, however, other than through his bare-bones claim that the rights were impeded when he was discriminated against. Although Willock's burden in adequately pleading his breach of contract claim is not heavy, he is required at least to provide enough detail to put the defendants on notice

22

of what breach they are defending against. All he has done, instead, has been to reiterate his discrimination claims with bare-bones contract-related language appended to the description.

Reframing this claim as based in the duty of good faith and fair dealing does not remedy those deficiencies, because it does not relieve him of the duty to describe the underlying contractual duty at issue. Tennessee law imposes a duty of good faith in the performance of contracts as an implied component of the express terms of performance. *Dick Broadcasting Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 668 (Tenn. 2013). As a result of this covenant, each contracting party promises to perform its part of the contract in good faith and, in return, expects the other party to do the same. *Coleman v. Wells Fargo Banks,* 218 F. Supp. 3d 597, 606–07. (M.D. Tenn. 2016) (Crenshaw, J.). That duty, however, must always be anchored to an existing contractual term.

The court stresses that its holding is limited to Willock's Complaint and the limited pleading therein. It may be the case that behavior such as the defendants' is actionable under a breach of contract theory in some cases; it may even be the case that one or more of the defendants breached a contract with Willock in this instance. It is not the job of the court, however, to imagine, without guidance, how that might be so. In order for his claim to survive a Rule 12(b)(6) motion, Willock was required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Because he did not do that with regard to breach of contract, the court will dismiss Count V as to 2330 Elliston.

## IV. CONCLUSION

For the foregoing reasons, 2330 Elliston's Motion to Dismiss (Docket No. 19) will be granted in part and denied in part, and Hilton Domestic's Motion to Dismiss (Docket No. 21) will be granted.

An appropriate Order will enter.

ALETA A. TRAUGER
United States District Judge